**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SHAMELL NAQUAN JOYNER,<br><br>                Defendant. | Case No. 23-cr-309-RC<br><br>Honorable Rudolph Contreras<br><br>Trial:  June 29, 2026 |

**DEFENDANT SHAMELL NAQUAN JOYNER'S MOTION FOR A MISTRIAL AND
FURTHER RELIEF BASED ON THE GOVERNMENT'S SUPPRESSION OF
<u>MATERIAL EVIDENCE FAVORABLE TO THE DEFENSE</u>**

Defendant Shamell Naquan Joyner, through undersigned counsel, respectfully moves for a mistrial and dismissal with prejudice of Counts 1 through 3 of the Superseding Indictment because the Government suppressed—and continues to knowingly suppress—material evidence in violation of Mr. Joyner's due process rights.

On July 4, 2026, the Government provided the Defense with notice of an arrest of a potential alternative suspect that occurred nearby and minutes after the alleged April 12, 2023 Falcon Fuel robbery—in the exact direction the suspect apparently fled.  This information was in the possession of Officer Michael Selgas, who—on July 2, 2026, prior to disclosure of this information to the Defense—testified regarding his involvement in the Falcon Fuel investigation. Additional material information related to the alternative suspect's arrest remains in the Government's possession, and the Government has refused to provide the information to the Defense.  The Government's failure to timely disclose this material information deprived the Defense of the ability to make effective use of it and violates Mr. Joyner's due process rights

under *Brady* v. *Maryland* and its progeny, Fed. R. Crim. P. 16, and Local Crim. R. 5.1.  Relief is warranted.

## BACKGROUND

The Government alleges that at approximately 6:05 a.m. on April 12, 2023, an individual robbed the Falcon Fuel at 1301 13th St. N.W., Washington, D.C.  (*See* Dkt. No. 9-1 ¶ 10.) Afterwards, Officer Selgas's police report indicates that the suspect fled on foot heading "eastbound" down a nearby alley. (*See* Selgas Report (attached hereto as Exhibit A).)

Yesterday, July 4, 2026, the Government provided to the Defense a July 3, 2026 email from Officer Selgas disclosing an arrest report and incident summary (hereafter, the "Report") for an alleged assault that occurred at 1250 9th St., N.W., Washington D.C—a few blocks east of the Falcon Fuel (*see* map below).  The assault occurred at approximately 6:20 a.m. on April 12, 2023—a few minutes after the robber allegedly fled the Falcon Fuel.  (*See* Incident Report at 6 (attached hereto as Exhibit B).)  The Report states that MPD Officers arrested D.M., for "banging" on a woman's car and then, when she stepped out of the vehicle to confront him, by striking her "4-6 times with a closed fist." (*Id.* at 1.)  The Report contains little additional detail regarding the suspect's description or his possessions at the time of his arrest.  On July 2, 2026, Officer Selgas testified that, after responding to the scene of the Falcon Fuel robbery, he sent a picture of the alternative suspect stopped at 930 M St. N.W. to MPD Officers responding to the alleged assault on 9th St. N.W, demonstrating that MPD contemporaneously recognized a potential connection between the incidents and/or descriptions of the suspects.  (*See* Email from J. English to K. Judge et al. dated July 5, 2026 (attached hereto as Exhibit C); *see also* July 2, 2026 Afternoon Tr. at 141:10–24.)

After receiving the arrest report on July 4, 2026, the Defense requested additional discoverable information about the alternative suspect, including police reports, 911 calls, and

officers' body worn camera (BWC) from the arrest, which the report confirms was operating at the time of the arrest.  (Exhibit C.)  On July 5, 2026, the Government stated that it will not provide "any additional information related to the assault," and denied the Defense's request.



**ARGUMENT**

**I.      The Government's Late Disclosure of Evidence Favorable to the Defense Violates Mr. Joyner's Due Process Rights.**

The Government's failure to disclose material information regarding the arrest of a potential alternative perpetrator prior to trial violates Mr. Joyner's due process rights and requires relief.  This non-disclosure constitutes a *Brady* violation because (1) the evidence is "favorable to the accused, either because it is exculpatory, or because it is impeaching," (2) the evidence was "suppressed by the State, either willfully or inadvertently;" and (3) prejudice "ensued."  *Strickler* v. *Greene*, 527 U.S. 263, 281–82 (1999).

*First*, the Report is both exculpatory *and* impeaching.  The Government's ability to establish Mr. Joyner's identity as the perpetrator of the charged crimes beyond a reasonable doubt is the crux of this case—the suppressed materials go directly to that issue.  Immediately following the incident at Falcon Fuel, MPD Officers arrested an individual consistent with the

suspect's description in the exact area that, per Officer Selgas, the Falcon Fuel suspect purportedly fled. (*See* Exhibit A.) The alternative suspect was arrested for banging on a woman's car window, yelling at her, and then striking her with a closed fist. Those facts are consistent with the physical assault of the Falcon Fuel store clerk, which is already in evidence through video exhibits and testimony. (*See* Gov. Ex. 101 at 1:00–1:03; July 2, 2026 Morning Tr. at 16:3–5.).[1] That pattern is consistent with the Government's allegations of the modus operandi of the charged conduct—an armed robber who physically assaults victims and attempts to flee with a stolen vehicle—a pattern that the Government has repeatedly highlighted in its briefing and trial presentation. (*See* July 1, 2026 Afternoon Tr. at 59:1–7, 62:12–15.) The Government cannot, on one hand, rely on such similarities for their prejudicial effect and then ignore those same similarities in the context of its discovery obligations. Officer Selgas's decision to contemporaneously share the photograph of the suspect stopped in the show-up identification with the officers investigating the assault further underscores the significant connection between these offenses. (*See* Exhibit C; *see also* July 2, 2026 Afternoon Tr. at 141:10–24.)

The exculpatory relevance of this information and prejudice due to its non-disclosure is obvious. *See, e.g.*, *Scurr* v. *Niccum*, 620 F.2d 186, 188 (8th Cir. 1980) (granting habeas relief due to prosecution's failure to turn over police reports showing alternative suspect near scene about 30 minutes after the crime); *Miller* v. *Angliker*, 848 F.2d 1312, 1316–17 (2d Cir. 1988) (granting habeas relief due to prosecution's failure to disclose files on an alternative suspect who was seen near the location of the charged crimes and who was caught committing a similar crime himself). Separately, this information also implicates the alleged April 17, 2023 Alexandria

---

[1]    Those facts also raise the question whether the assault suspect may have been attempting to carjack the victim after fleeing the scene of the robbery, an issue that necessitates further investigation.

robbery, which the Government in opening statement expressly tied to the Falcon Fuel incident through the shell casings recovered at both scenes. (*See* July 1, 2026 Afternoon Tr. at 64:17–19, 67:2–4.).

The suppressed information is also impeachment material. Officer Selgas and other Government witnesses testified about the Falcon Fuel investigation without the Defense having the opportunity to cross-examine them about MPD's decision to communicate with officers responding to the 9th St. assault, and the steps taken to investigate the incident and rule out other individuals who may have committed the Falcon Fuel robbery. *See Kyles* v. *Whitley*, 514 U.S. 419, 445 (1995) (evidence relevant to a potential alternative suspect was favorable to the defense because it would have raised opportunities to attack "the thoroughness and even the good faith of the investigation").

*Second*, the evidence was suppressed within the meaning of *Brady* and its progeny. *See In re Sealed Case No. 99-3096 (Brady Obligations)*, 185 F.3d 887, 892 (D.C. Cir. 1999) (failure to disclose exculpatory material includes "both the failure to search for *Brady* material and the failure to produce it"). The Report was within the possession of Officer Selgas, who was part of the prosecution team and testified on behalf of the Government; more generally, the Report was within the possession of the Metropolitan Police Department, which investigated the charges in this case. *See United States* v. *Libby*, 429 F. Supp. 2d 1, 10–11 (D.D.C. 2006) (finding that materials were within the "possession, custody, or control" of the prosecution team if the materials were held by an agency that "actually contributed to the investigation").

Under *Brady*, individual prosecutors have an "inescapable" obligation to learn of "any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles*, 514 U.S. at 437–38. These facts—including that the Officer who possessed

the information was a testifying Government witness who undoubtedly prepared his testimony with the prosecutors—suggest there was either a willful or inadvertent failure to search for favorable evidence in violation of the Government's *Brady* obligations.

The Government's continued suppression raises further concerns. On July 5, 2026, the Government denied the Defense's explicit request for additional information relating to the assault, claiming "there is no evidence that there is a connection" between the assault and the conduct charged in the Superseding Indictment. (Exhibit C.) That is incorrect. There is significant evidence of a connection between the alleged incidents including the close timing, proximity, direction of flight, description of the suspects, and similarities in the methods of perpetrating the alleged incidents. Regardless, the prosecution's unilateral assessment of the evidence does not excuse suppression. *See United States* v. *Moore*, 651 F.3d 30, 99–100 (D.C. Cir. 2011) ("[T]he prudent prosecutor will resolve doubtful questions in favor of disclosure . . . particularly [] where the defendant brings the existence of what he believes to be exculpatory or impeaching evidence or information to the attention of the prosecutor and the district court." (internal citations omitted)); *see also* Local Crim. R. 5.1(a) ("[T]he government shall disclose to the defense all information [constituting *Brady* material] . . . . *This requirement applies regardless of whether the information would itself constitute admissible evidence*." (emphasis added)).

*Third*, the Government's late disclosure unquestionably undermined the ability "to make effective use of the disclosed evidence," *United States* v. *Celis*, 608 F.3d 818, 836 (D.C. Cir. 2010), both for purposes of pre-trial investigation and arguments at trial. Had these materials been disclosed before trial, the Defense could have investigated the material facts surrounding the alternative suspect, the route between the Falcon Fuel and the location of the arrest, and

potentially additional witnesses (including the assault victim and bystander witness) or other relevant information material to preparing a defense.  As noted above, the Government continues to suppress additional material information concerning the arrest and surrounding facts, including the BWC footage, CAD/911 materials, booking photographs and property records, information regarding the suspect's clothing and possessions, information regarding the arresting officers, victim, witness(es), and other similar information.

The Defense's lost opportunities to use the information at trial are numerous.  In particular, the Defense could not: (1) completely impeach Officer Selgas and potentially the Government's other Falcon Fuel witnesses regarding the steps law enforcement took in its investigation into the Falcon Fuel Robbery; (2) elicit testimony on cross-examination regarding each witness's knowledge of information relevant to the alternative suspect's arrest, including the precise time and direction in which the Falcon Fuel suspect fled; or (3) make effective use of the alternative suspect theory in its opening statement.  The Government highlighted the Falcon Fuel robbery in opening statement and expressly attempted to tie the Falcon Fuel robbery to the April 17, 2023 Alexandria robbery.

## II.    Relief is Warranted.

Relief from the Government's due process violation is necessary to rectify the resultant prejudice.  "Where the district court concludes that the government was dilatory in its compliance with *Brady,* to the prejudice of the defendant, the district court has discretion to determine an appropriate remedy, whether it be exclusion of the witness, limitations on the scope of permitted testimony, instructions to the jury, or even mistrial."  *United States* v. *Pasha*, 797 F.3d 1122, 1141 (D.C. Cir. 2015) (citation omitted).

A mistrial and dismissal with prejudice of Counts 1 through 3 (the Falcon Fuel Counts) is warranted.  The Government's suppression deprived the defense of the  opportunity to make

effective investigative use pretrial and at trial of this critical information material to the defense. Simply recalling the affected witnesses cannot cure the prejudice the suppression has injected into the Defense's overall trial strategy and presentation, including the lost opportunity to utilize the information during opening statements. *See e.g.*, *United States* v. *Bundy*, 968 F.3d 1019, 1038, 1043–45 (9th Cir. 2020) (affirming dismissal with prejudice due to mid-trial disclosure that demonstrated "reckless disregard for the prosecution's constitutional obligations"); *United States* v. *Chapman*, 524 F.3d 1073, 1084–89 (9th Cir. 2008) (same); *United States* v. *Nejad*, 487 F. Supp. 3d 206, 209 (S.D.N.Y. 2020) (imposing sanctions after dismissing the Indictment with prejudice post-trial when prosecutors disclosed *Brady* material mid-trial).

A mistrial may also be proper on the counts arising from the April 17, 2023 Alexandria robbery (Counts 9 and 10), given that the Government linked this robbery to the Falcon Fuel incident with the shell casings in its opening. "[O]nce a court finds a *Brady* violation, a new trial follows as the prescribed remedy, not as a matter of discretion." *United States* v. *Oruche*, 484 F.3d 590, 595 (D.C. Cir. 2007); *see United States* v. *Evans*, 888 F.2d 891, 897 n.5 (D.C. Cir. 1989) (holding that a mistrial is the appropriate remedy for a *Brady* violation). Mr. Joyner therefore requests leave to seek supplemental relief as to Counts 9 and 10 after production and review of the additional suppressed materials. In the interim, the Court should preclude the Government from relying on the Falcon Fuel robbery to connect it with Counts 9 and 10, until the Defense can further develop the record on the suppressed evidence.

In addition, the Defense respectfully requests the following forms of relief:

1. To compel the immediate production of all related materials in the prosecution team's possession (including the MPD) relating to the arrest and detention of the potential alternative suspect on April 12, 2023, including all BWC, 911 calls, police reports, witness and victim

statements including interview notes and memoranda, the identities of the witness and victim, and arrest and detention records, including any records reflecting the suspect's clothing, possessions, description, statements, location, condition, or route of travel at or near the time of arrest. The Court should also order the Government to preserve all such materials and avoid spoliation.

2. A continuance until one week after the Government has fully produced all materials related to the arrest, to allow time for the Defense to investigate and prepare its strategy in light of this new information. *See United States* v. *Moore*, 867 F. Supp. 2d 150, 152 (D.D.C. 2012).

3. An opportunity to recall and conduct expanded re-cross examination of each of the three witnesses who previously testified regarding the April 12, 2023 robbery: Officer Michael Selgas, DFS Amanda Mendez, and the complaining witness.

4. An instruction to be read to the jury informing them of the Government's failure to disclose material evidence and permitting them to draw an adverse inference against the Government on that basis. *See, e.g.*, *United States* v. *Garrison*, 888 F.3d 1057, 1063 (9th Cir. 2018) (affirming conviction where "the district court instructed the jury by advising of the government's failure to timely comply with its constitutional obligations, and telling the jury that it could draw adverse inferences from this failure"); *United States* v. *Schulte*, 578 F. Supp. 3d 596, 609–10 (S.D.N.Y. 2021) (granting an "adverse jury instruction . . . [that] advised the jurors that the Government had only revealed [the *Brady* evidence] during trial and that it should have done so sooner."); *see also Pasha*, 797 F.3d at 1141 (holding that "the district court has discretion to determine an appropriate remedy" for *Brady* violations, which includes "instructions to the jury").

5. Leave to call additional witnesses or offer additional evidence if the Defense finds it necessary to do so after reviewing and investigating the late-disclosed evidence.

**CONCLUSION**

Mr. Joyner respectfully asks the Court for the above forms of relief to cure the prejudice resulting from the Government's due process violation.  Mr. Joyner respectfully reserves all rights, including the opportunity to supplement his requested relief as the record develops.

Dated:  July 5, 2026

|  |  |
|---|---|
|  | */s/ Kamil R. Shields* |
| John J. Liolos (*pro hac vice*) | Kamil R. Shields (1674318) |
| Melike Tokatlioglu (*pro hac vice*) | Nathan H. Golden (90024837) |
| SULLIVAN & CROMWELL LLP | Kiera S. Judge (90043582) |
| 125 Broad Street | SULLIVAN & CROMWELL LLP |
| New York, NY 10004 | 1700 New York Avenue, N.W., Suite 700 |
| Telephone:  (212) 558-4000 | Washington, D.C. 20006 |
|  | Telephone:  (202) 956-7040 |

*Counsel for Defendant Shamell Naquan Joyner*

-10-